**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**TIMOTHY NARDIELLO**,

                **Plaintiff,**           No. 07-cv-0580
                                             (GLS-RFT)
       v.

**TERRY ALLEN**,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of James M. Brooks<br>72 Olympic Drive<br>Lake Placid, New York 12946 | JAMES M. BROOKS ESQ. |
| Thorn, Gershon Law Firm<br>5 Wembley Court<br>New Karner Road<br>Albany, New York 12212-5054 | ARTHUR H. THORN ESQ.<br>BRIAN P. BARRETT ESQ. |
| **FOR THE DEFENDANT:** | |
| TERRY ALLEN<br>Defendant, _Pro Se_<br>23185 S. Central Point Road<br>Canby, Oregon 97013 | |

**Gary L. Sharpe**
**U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Timothy Nardiello brings this action alleging that Terry Allen made slanderous statements concerning Nardiello which damaged Nardiello in his trade or profession and imputed unchaste behavior in a man. Pending is Allen's motion to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**II. Procedural History**

Nardiello, a New York resident, commenced this action by filing a complaint on December 13, 2006, in the New York Supreme Court for the County of Essex. Allen, an Oregon resident, filed a Notice of Removal to this court on June 1, 2007, alleging diversity of citizenship. *Dkt. 1.* Subsequently, on June 8, 2007, Allen moved to dismiss for lack of personal jurisdiction. *Dkt.* 4.[1]

---

[1] A statement in Nardiello's response brief in opposition to Allen's motion to dismiss suggested that Nardiello believed that Allen's removal was untimely. Because it was not clear from the parties' submissions whether removal had been timely, the court invited further briefing on the subject. *See Dkt. 15.* However, by affirmation dated October 24, 2007, counsel for Nardiello indicated his waiver of "any issue in regards to defendant's late removal to this Court." *See Dkt. 16.*

### III. **Facts**

At this stage of the proceedings, where the court has not held an evidentiary hearing regarding the bases of personal jurisdiction, Nardiello need only make a *prima facie* showing of personal jurisdiction over Allen to survive dismissal.  *See Cutco Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986) ("Although . . . the plaintiff has the ultimate burden of establishing jurisdiction over defendant by a preponderance of the evidence . . . until an evidentiary hearing is held, it need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists.") (citations omitted).  Thus, at this stage, the facts alleged in the pleadings and affidavits submitted by the parties are construed in the light most favorable to Nardiello, and all doubts are resolved in his favor.  *Id.*

**A.     Nardiello's Association with the United States Bobsled and Skeleton Federation**

Nardiello served as head coach of the United States Olympic Skeleton Team from October, 2002 through March, 2006.  *See Aff. of Timothy Nardiello in Supp. of his Opp'n to Def.'s Mot. to Dismiss ("Nardiello Aff."), ¶ 2; Dkt. 7.*  In his role as head coach of the Skeleton Team, Nardiello was required to make regular reports to the Skeleton Program

3

Committee ("SPC"), the regulating body of the Skeleton Team.  *Id. at ¶¶ 3, 4.*  Additionally, prior to implementing any material changes to the Skeleton Team, Nardiello was required to seek SPC approval.  *Id. at ¶ 4.*  The SPC, in turn, was run under the auspices of the United States Bobsled and Skeleton Federation ("USBSF").  *Id. at ¶ 3.*

**B.     Allen's Association with the United States Bobsled and Skeleton Federation**

According to the Affidavit of James Shea, the former president of the USBSF, submitted in support of Nardiello's Opposition to Defendant's Motion to Dismiss ("Shea Aff."), Allen served as an "athlete elected member at large" of the SPC Board from 2003 through 2005.  *Shea Aff. ¶ 9; Dkt. 7.*[2]  In addition to his role on the SPC, Allen was employed as a coach by the USBSF on a "part-time, race-by-race basis" from January 25, 2004 through February 7, 2004.  *Allen Aff. ¶ 6; Dkt. 4.*

**C.     Alleged False Statements made by Allen**

Nardiello alleges that on five separate occasions between December 17, 2005 and January 3, 2006, Allen made false statements about

---

[2]Allen disputes this contention.  According to Allen, he served on the SPC advisory committee from the fall of 2002 until his replacement was elected in the fall of 2004.  *See Aff. of Terry Allen in Supp. of his Reply ("Allen Reply Aff.") ¶¶ 5, 7; Dkt. 12.*  Moreover, Allen asserts that, since 2004, he has neither been employed by, nor held any position with, the USBSF.  *See Aff. of Terry Allen in Supp. of Mot. to Dismiss ("Allen Aff.") ¶ 6; Dkt. 4.*

4

Nardiello in correspondence to Robbie Vaughn, Interim Executive Director of the USBSF, and other members of the USBSF Board. *See Compl. ¶¶ 7-12; Dkt. 1.*[3] As a result of these statements, Nardiello contends that he was suspended as head coach of the Skeleton Team, and that he was injured in his good name and reputation.

**D.   Allen's Contacts with New York**

Nardiello alleges that Allen, through "his association and pervasive activities" with the USBSF, was at all relevant times "doing business and/or transacting business in the State of New York." *Compl. ¶ 2; Dkt. 1.* Additionally, Allen "on numerous occasions has personally presented [sic] to Lake Placid, New York between 2002 and November of 2005 for the purpose of engaging in the business of skeleton." *Resp. Br. in Opp'n to Mot. to Dismiss ("Nardiello Opp'n"), p. 4; Dkt. 7.*

More specifically, Nardiello alleges that "during calendar years 2003 through 2005 Allen was a member in the [SPC] . . . which was organized by and run under the direction of the [USBSF]," a New York not-for-profit corporation headquartered in Lake Placid, New York. *Id. at p. 4.* As a

---

[3]The substance of the communications is not relevant to the issue before the court. It suffices to say that the communications concerned Nardiello's fitness to serve as coach, and contained references to alleged acts of "unethical sexual behavior."

5

member of the SPC, Allen "has personally traveled to board meetings in Lake Placid and regularly participated in SPC Board conference calls" which originated from the SPC offices in Lake Placid. *Id. at p. 5 (citing Shea Aff. ¶¶ 9, 11).* With respect to the allegedly defamatory emails authored by Allen, Nardiello alleges that said emails were carbon-copied to individuals on the USBSF Board who were residents of New York. *Id. at p. 6 (citing Shea Aff. ¶ 12).*

Allen does not dispute that on "rare" occasions he attended SPC meetings in person. *See Reply to Pl.'s Opp'n to Mot. to Dismiss, p. 5; Dkt. 11.* However, he claims that he usually participated in such meetings telephonically. *Id.* Allen estimates that, in total, he has traveled to New York to participate in athletic competitions as a skeleton athlete or a skeleton coach on no more than five occasions. *See Allen Reply Aff. ¶ 4; Dkt. 12.* Moreover, Allen has not been in New York at all since November 5, 2005. *See Allen Aff. ¶ 5; Dkt. 4.* During the time period in which the allegedly defamatory emails were sent, Allen was a resident of Wyoming. *Id. at ¶ 3.* Allen claims that he has "never sent any email regarding [Nardiello] to any individual whom [he] knew to be in New York or to reside solely in New York." *Id. at ¶ 9.* Finally, following his replacement on the

6

SPC in the fall of 2004, Allen has "not represented or held any office or position of any kind with USBSF, the [SPC], any Olympic organization, or other entity related to skeleton or winter sports." *See Allen Reply Aff. ¶ 8; Dkt. 12.*

## IV. Discussion

It is well-settled that "[p]ersonal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *Cutco Indus.,* 806 F.2d at 365. Thus, jurisdiction in this case is governed by the law of New York. Because Allen is a non-domiciliary, and because his contacts with New York are not so "continuous and systematic" as to subject him to jurisdiction on a general jurisdiction theory, jurisdiction must be premised on the New York long-arm statute. *See Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006).[4]

The New York long-arm statute provides for four bases of jurisdiction over non-domiciliaries. *See* N.Y. C.P.L.R. § 302(a)(1)-(4). Relevant here is that provision of the statute which provides that "a court may exercise

---

[4]Nardiello has not argued that Allen is subject to the general jurisdiction of the court. *See Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss ("Nardiello Opp'n"), pp. 3-4; Dkt. 7 (invoking the long-arm statute).*

7

personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).[5] To establish jurisdiction under this section, two conditions must be met: "(1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Solé Resort,* 450 F.3d at 103 (citing *McGowan v. Smith,* 437 N.Y.S. 2d 643 (N.Y. 1981)). A party "transacts business" in New York when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Cutco Indus.,* 806 F.2d at 365 (citations, quotations, and alterations omitted). As to the second requirement, a claim "arises from" business activity "when there is some articulable nexus between the business transacted and the cause of action sued upon . . . or when there is a substantial relationship between the transaction and the claim asserted." *Solé Resort,* 450 F.3d at 103 (citations and quotations omitted).

---

[5]Subsections (a)(2) and (a)(3) of the long-arm statute, which provide for jurisdiction over causes of action arising out the commission of tortious acts, are inapplicable here because those subsections expressly exclude "a cause of action for defamation of character." *See* N.Y. C.P.L.R. §§ 302(a)(2), (3). Subsection (a)(4) of the long-arm statute is inapplicable because Nardiello has not alleged that Allen "owns, uses or possesses any real property situated within the state." *See* N.Y. C.P.L.R. § 302(a)(4).

Here, the only transactions that are relevant to the jurisdictional inquiry are the emails that were sent by Allen to Robbie Vaughn and others in December of 2005 and January of 2006. Nardiello makes much of Allen's earlier contacts with New York, including his role on the SPC and his skeleton coaching activities. However, by Nardiello's own admission, these business transactions concluded no later than November of 2005. *See Nardiello Opp'n, p. 4; Dkt. 7.*[6] Nardiello's defamation claim arises out of the emails sent by Allen in December of 2005 and January of 2006, not out of Allen's earlier contacts with New York.

Nardiello argues that he and Allen "only came to know each other through their associations in the skeleton community and through their joint oversight of the U.S. Skeleton Team as SPC Board members." *Nardiello Opp'n, p. 6; Dkt. 7.* However, in the context of personal jurisdiction, a claim does not "arise from" a given transaction merely by the satisfaction of a simple "but for" test. The decision of the New York Court of Appeals in *Talbot v. Johnson Newspaper Corp.,* 522 N.E. 2d 1027 (N.Y. 1988), is directly on point. In that case the plaintiff, a coach

---

[6]Allen contends that his role on the SPC terminated in the fall of 2004. *See Allen Reply Aff.* ¶¶ 5, 7; Dkt. 12.

9

at St. Lawrence University, alleged that the defendants, a former St. Lawrence student and her father, had defamed him in two letters written by the father to the university president and board of trustees, and a telephone interview of the daughter conducted by a newspaper for an article on the coach's alleged improprieties. *Id.* at 1028. The defendants were both California residents, the letters were sent from California, and the daughter's interview with the newspaper occurred while she was in California. *Id.* Upon a motion to dismiss for lack of personal jurisdiction, the trial court held that the requirements of the New York long-arm statute were satisfied by the daughter's pursuit of a college degree in New York, reasoning that absent her attendance at St. Lawrence, she would not have known of the coach's alleged improper behavior. *Id.* The Court of Appeals disagreed, noting that "[e]ven if Patricia MacLaren's previous enrollment and attendance at a New York university satisfied the requirement of purposeful activities in New York, there was no showing that–years after termination of that relationship–there was the required nexus between the MacLarens' New York 'business' and the present cause of action." *Id.* at 1029.

Applying the reasoning of *Talbot* to the facts before the court, it is clear that Nardiello's defamation claim does not arise out of Allen's contacts with New York while he was a member of the SPC and a skeleton coach, because these contacts had ended by the time the allegedly defamatory statements were made. The connection between Allen's "business" in New York prior to November of 2005, and his statements made subsequent to November of 2005, is too attenuated for purposes of the long-arm statute. *See Talbot,* 522 N.E. 2d at 1028-29; *see also Rescuecom Corp. v. Hyams,* 477 F.Supp. 2d 522, 531 (N.D.N.Y. 2006) (defamation claim based on defendant's disparaging statements concerning Rescuecom did not arise out of defendant's contacts with New York in his former role as a Rescuecom franchisee); *cf. Jolivet v. Crocker,* 859 F.Supp. 62, 65 (E.D.N.Y. 1994) (where plaintiff alleged that he was fired because defendant informed plaintiff's employer, by letter sent from Florida, of plaintiff's alleged anti-Semitic remarks, the lawsuit "arose out of" the letter, and not the "New York activities," *i.e.,* the underlying business dealings between plaintiff's employer and defendant).

The remaining question, then, is whether the five emails sent by Allen from outside of New York to recipients within the state–from which this defamation action unquestionably arises–constitute the transaction of business in New York. The weight of authority holds that such defamatory communications do not alone amount to the transaction of business. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 248 (2d Cir. 2007) ("New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state."); *Talbot,* 522 N.E. 2d at 1028-29 (two letters and a telephone interview insufficient to confer long-arm jurisdiction); *Kim v. Dvorak,* 658 N.Y.S. 2d 502, 504 (N.Y. App. Div. 1997) (four alleged defamatory letters sent from out-of-state insufficient to confer long-arm jurisdiction). Accordingly, Nardiello has not made a *prima facie* showing of personal jurisdiction over Allen.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Allen's motion to dismiss for lack of personal jurisdiction is GRANTED; and it is further

**ORDERED** that the complaint is dismissed; and it is further

**ORDERED** that the Clerk of the Court enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: November 16, 2007
Albany, New York

Gary L. Sharpe
U.S. District Judge

13